[Civ. No. 1253.   Third Appellate District.—December 16, 1914.]

## A. F. FORD, Respondent, v. LOU KUM SHU, Appellant.

ACTION FOR GOODS SOLD—AGENCY—SUFFICIENCY OF EVIDENCE.—In this action to recover the reasonable value of certain goods delivered by plaintiff's assignor to defendants it is held that the evidence was sufficient to sustain the finding that one of the defendants was liable for the goods ordered by the other up to the time the former notified the vendor that he would no longer be responsible for supplies furnished the other defendant.

ID.—AGENCY—EVIDENCE—DECLARATIONS AND TESTIMONY OF AGENT.— While it is a well-settled rule that agency cannot be established by the extra-judicial statements or declarations *in pais* of one pretending to act as agent and that such statements or declarations are incompetent and, therefore, inadmissible as in proof of agency, it is equally well established that the fact of agency, when it rests in parol, may be established on the trial by the testimony of the agent himself; in other words, the testimony of an agent sworn as a witness in a case, when the question of his agency is involved, is competent to establish it and its extent and nature.

ID.—IMPLIED AUTHORITY—ACTS AND CIRCUMSTANCES.—Where the authority of an agent is unwritten and express oral authority is not satisfactorily shown, such authority may be implied from acts and circumstances shown.

ID.—WITNESS—INCONSISTENT STATEMENTS—IMPEACHMENT — QUESTION FOR TRIAL COURT.—The effect of inconsistent statements in the tes-

timony of a witness is merely to impeach the integrity of the entire testimony of such witness or impair its evidentiary force, but whether it has such effect or to what extent, if any, is a proposition whose determination is wholly with the trier of the facts; and the latter is at liberty to accept parts of the witness's testimony and reject other parts thereof, if such a course is not inherently unreasonable, and if it believes certain parts thereof which covered the salient points in issue, it has the right to accept the parts so credited as the bases of its findings, even though such parts, besides being inconsistent with other parts of the witness's testimony, are directly opposed by the adversary testimony presented.

Id.—Ratification—Inference from Words or Conduct.—Ratification of a contract made by an agent need not be in express terms in order to bind the principal; if it is fairly inferable from the words or conduct of the party it is sufficient, and like the act of conferring antecedent authority upon the agent may be express or implied.

Id.—Implied Authority—Rights of Third Parties—Ratification.— Quiescence is tantamount to acquiescence, and, therefore, the law forbids the principal denying an authority in the agent the existence of which is implied from his own conduct, where such authority concerns and affects the rights of third parties. This rule is not alone applicable to the doctrine of ostensible agency but is equally applicable to the doctrine of ratification.

Id.—Trial by Court—Admission of Incompetent Testimony—When Disregarded.—In such a case, where the cause was tried by the court, without a jury, it will be assumed on appeal that, if incompetent testimony crept in the record, the trial court disregarded it in deciding the question at issue, there being ample competent testimony to support the conclusion reached.

Id.—Cross-examination—Proper Rule.—In such a case, there was no error in sustaining an objection to the cross-examination of the plaintiff to a question asked by the defendant which had for its object to impeach the plaintiff by showing that in his verified complaint he had averred that one of the defendants was severally liable for the full amount of the claim, while the evidence showed that this defendant was liable, if at all, for only a part of the sum sued for, the witness having repeatedly answered that he understood he was suing both of the defendants for the full amount, and the court finally remarking that it understood what the witness intended to say and refused to allow further cross-examination along that line.

APPEAL from a judgment of the Superior Court of Placer County. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

W. B. Lardner, and Sterling Carr, for Appellant.

Meredith, Landis & Chester, for Respondent.

HART, 'J.—This is an action by the plaintiff to recover from the defendants the sum of $554.19, alleged to be the reasonable value of goods, wares, merchandise, materials, and supplies sold and delivered to the defendants by A. F. Ford & Co., a copartnership.

Prior to the commencement of the action, the complaint alleges, said copartnership sold, assigned, and transferred to the plaintiff all its claim and demand against the defendants on account of the sale and delivery of the goods, wares, etc., referred to.

The complaint does not proceed upon the theory of a copartnership existing between the defendants, nor was the trial had upon that theory, but it is the claim that the goods, wares, merchandise, etc., to recover the reasonable value of which is the object of this action, were procured from the plaintiff by the defendant, Covey, as the agent of the defendant, Lou Kum Shu.

The defendant, Covey, did not answer the complaint, but default for such omission was not entered until the trial was had.

The defendant, Lou Kum Shu, answered the complaint, specifically traversing the material averments thereof, claiming that the goods, etc., in question were not purchased by or for him.

The judgment was in favor of the plaintiff and against the defendant, Lou Kum Shu, in the sum of $331.00, and against the defendant, Covey, in the sum of $223.19.

This appeal is prosecuted by the defendant, Lou Kum Shu, from the judgment rendered and entered against him, supported by a transcript of the testimony prepared pursuant to the provisions of sections 953a, 953b, and 953c of the Code of Civil Procedure.

The assignments are: That the evidence does not support the findings and that the court committed prejudicial error in admitting and excluding certain evidence.

The real point in controversy is whether the defendant, Covey, in the transactions from which this action arises, was or was not the agent, ostensible or real, of the defendant, Lou Kum Shu.

The facts developed by the evidence from which the court manifestly made its findings are, briefly, these: The Lou Kum Shu Company, of which the defendant of that name was the head, was the owner of some thirteen hundred acres of land in Placer County adapted to farming and stock-raising purposes. In the early part of the year 1911, Lou Kum Shu, acting for his company, and the defendant, Covey, entered into an agreement, which was not committed to writing, or, at any rate, not so executed, by the terms of which said Covey entered into the possession and occupation of said land as the agent of said company for the purpose of carrying on the business of farming and stock-raising thereon. The agreement was that Covey should so remain in possession of and manage said business for a period of five years from the date of the making of the agreement and was to receive for his services rendered in that capacity the sum of fifty dollars per month, and, in addition thereto, twenty per cent of the net proceeds derived from the farm during that period. Covey was to employ such labor as he might find necessary to carry on the farming and stock-raising business. Lou Kum Shu was to furnish the financial means with which to carry on the business for the first year, in which, presumably, the work would practically be of a preparatory character and the farm and the business conducted thereon incapable of producing returns in any considerable amount. Under this arrangement, Covey, as stated, took possession of the farm and charge of the business thereof. He employed the necessary labor to assist in carrying on the farm, and, according to his testimony, under the authority vested in him by the said agreement with Lou Kum Shu, opened an account for such goods, wares, merchandise, and farming supplies as might, in his judgment, be required, with the plaintiff's assignor, a firm engaged in the general merchandising business in Placer County. At the request of Covey, the plaintiff's assignor kept two separate accounts of the dealings of the former with the latter—the one designated on the books of account as the "ranch account," under which were noted and charged all goods or supplies furnished by the firm to Covey and used by him for strictly farming purposes, such as wheat, barley, seeds, etc., and the other designated as the "groceries account," under which were charged all the groceries purchased by Covey for use on the farm.

The hired laborers were to board at Covey's home on the farm, and Covey, in paying them their wages each month, was to and did deduct therefrom the amount which they were to pay for their board, varying, during the period of time Covey was in charge of the farm before the misunderstanding leading to this action transpired, from sixteen dollars to twenty-five dollars per month. At no time, testified Covey (and in this statement we find no contradiction), did he actually receive any money for boarding the hired help. The agreement was, as before intimated, that Lou Kum Shu would pay all bills contracted by Covey on account of the farm and the business thereof during the latter's management of said farm and business, or, as Covey himself stated it, "all provisions and all bills that I contracted were agreed upon by Lou Kum Shu to be paid by him on the ordering of those supplies by me." The accounts against the farm were always submitted by Covey to Lou Kum Shu and the latter always approved them when he found no mistakes or errors therein. During the time that the firm of Ford & Co. was furnishing supplies to Covey, Lou Kum Shu called at the firm's store and paid that part of the account designated in the firm's books as the "ranch account." On that occasion, the plaintiff said to him: "This (referring to the whole account) is a large account and what arrangements have you and Covey made?" and further said to him that the firm could not continue to furnish groceries unless he (Lou Kum Shu) acquainted the firm with knowledge of the nature of the business relations existing between him and Covey. To this Lou Kum Shu replied that he and Covey were partners and were to sustain that relation for five years, and upon the faith of that statement by Lou Kum Shu the assignor of plaintiff "continued the account right along," so testified the plaintiff.

Ford declared that there was no difference, so far as the understanding the firm had of the transactions, between the "ranch" and the "groceries" accounts; that they were, as before stated, kept separately at the request of Covey, who said, in effect, that thus keeping the accounts would amount only to a matter of convenience to him in dealing with Lou Kum Shu.

After making the payment on the account, as above explained, and on the thirtieth day of May, 1912, Lou Kum Shu notified Ford & Co. to cease furnishing Covey any more goods

unless he (Lou Kum Shu) gave Covey an order for the same. Covey, however, continued to procure groceries from Ford & Co. after the latter was notified by Lou Kum Shu not to supply him with goods, etc., and this accounts for the judgment herein against Covey for the sum of $223.19, said amount being the difference between the amount for which the plaintiff obtained judgment against Lou Kum Shu and the amount sued for.

Upon the facts above briefly narrated, although in many important particulars flatly contradicted by Lou Kum Shu, the court was amply warranted in finding and in concluding, as a matter of law, that Lou Kum Shu was liable for the groceries sold by the plaintiff's assignor to Covey, up to May 30, 1912, at which time, as seen, Lou Kum Shu notified Ford & Co. that he would no longer be responsible for supplies furnished Covey by said firm in the absence of an order therefor from him.

While it is a well-settled rule that agency cannot be established by the extra-judicial statements or declarations *in pais* of one pretending to act as agent and that such statements or declarations are incompetent and, therefore, inadmissible as in proof of agency, it is equally well established that the fact of agency, when it rests in parol, may be established on the trial by the testimony of the agent himself. In other words, "the testimony of an agent sworn as a witness in a case, when the question of his agency is involved, is competent to establish it and its extent and nature." (*Kast* v. *Miller & Lux,* 159 Cal. 723, 727, 728, [115 Pac. 932]; see, also, Mechem on Agency, sec. 101; *Parker* v. *Pond,* 121 Ala. 529, [25 South. 898]; *O'Leary* v. *German A. Ins. Co.,* 100 Iowa, 390, [69 N. W. 686]; *Brown* v. *Cone,* 80 App. Div. 413, [81 N. Y. Supp. 89]; *Lawall* v. *Groman,* 180 Pa. St. 532, [57 Am. St. Rep. 662, 37 Atl. 98]; *Garber* v. *Blatchley,* 51 W. Va. 147, [41 S. E. 222]; *New Home S. M. Co.* v. *Leago,* 128 N. C. 158, [38 S. E. 805]; *Union Hosiery Co.* v. *Hodgson,* 72 N. H. 427, [57 Atl. 384]; *Nostrum* v. *Halliday,* 39 Neb. 829, [58 N. W. 429]; *Hubbock* v. *Ross,* 96 Cal. 426, [31 Pac. 353]; *Bergtholdt* v. *Porter Bros.,* 114 Cal. 681, [46 Pac. 738]; *Ferris* v. *Baker,* 127 Cal. 520, [59 Pac. 937]; *Petterson* v. *Stockton etc. Co.,* 134 Cal. 244, [66 Pac. 304].)

And "it cannot be doubted that where the authority of an agent is unwritten, and express oral authority is not satis-

factorily shown, such authority may be implied from acts and circumstances shown." (*Anglo-Californian Bank* v. *Cerf,* 147 Cal. 393, [81 Pac. 1081]; Reinhard on Agency, sec. 203.)

From the testimony of Covey the fact is fairly deducible that express authority was conferred upon him by Lou Kum Shu to purchase groceries for him, to be consumed on the farm. Covey not only so declared in so many words, but he testified that the hired help were to be fed by him; that, while he deducted from their wages each month the amount of their board, he actually received no money from Lou Kum Shu for such board, and that the latter always inspected the "groceries" as well as the "ranch" account and invariably approved the same when correct. Thus it clearly enough appears from the testimony of Covey that, as manager of the farm and the business thereof and in all transactions connected therewith, he was, at all times, subject to the superior authority and his transactions to the supervisory control of Lou Kum Shu.

It may be conceded that, in certain parts of his testimony, Covey made what appear to be statements inconsistent with the theory that, included within his powers as agent of Lou Kum Shu, was the authority to purchase groceries for consumption on the farm. Whether these inconsistencies were real or only the result of the inaptitude of the witness to express himself clearly, it is difficult for this court to say. But it is quite apparent, from the general character of his answers to direct and cross questions, that the trial court could reasonably have accounted for the seeming inconsistencies in his answers upon the hypothesis that, while at all times, he intended to convey the idea that he was the agent of Lou Kum Shu, with authority to purchase for the latter supplies of all kinds required on the farm, he was not at all times, while testifying, happy in the selection of the precise words or phrases essential to a clear expression of that idea. But, however that may be, the effect of inconsistent statements in the testimony of a witness is merely to impeach the integrity of the entire testimony of such witness or impair its evidentiary force, but whether it has such effect or to what extent, if any, is a proposition whose determination is wholly with the trier of the facts. Hence, in this case, the trial court, in the exercise of the discretion vested in it as the trier and

26 Cal. App.—14

arbiter of the questions of fact, was at liberty to accept parts of Covey's testimony and reject other parts thereof, if such a course was not inherently unreasonable, and if it believed certain parts thereof which covered the salient points in issue, it had the right to accept the parts so credited as the bases of its findings, even though such parts, besides being inconsistent with other parts of the witness's testimony, were directly opposed by adversary testimony presented by Lou Kum Shu.

But, granting that the testimony was not sufficient to justify a finding of express antecedent authority in Covey to purchase the groceries in question for Lou Kum Shu, it cannot be doubted that the latter's statement and conduct, long after the "groceries account" had been running, and while it was still running, were sufficient to warrant the inference and therefrom a finding that Lou Kum Shu acquiesced in and ratified the transactions of Covey as to groceries, and the authority in Covey to buy the groceries already charged in the account and to continue so to purchase groceries thereafter, until otherwise ordered by Lou Kum Shu, as heretofore explained.

It will be recalled that, while Covey was yet buying groceries at the store of the assignor of plaintiff, the latter asked Lou Kum Shu to explain to him the nature of the business relations then and theretofore subsisting between him and Covey, and, at the same time, said to him that the existing account was large and that the firm did not propose to continue to furnish groceries to Covey unless it was apprised of the nature of the business agreement with respect to the farm into which the two men had entered, and that Lou Kum Shu replied that they were partners and would, under their agreement, remain so for a period of five years. On the occasion thus referred to there was no repudiation by Lou Kum Shu of Covey's authority to buy groceries for the farm for the former, nor did Lou Kum Shu state to the plaintiff that the scope of Covey's authority as his agent was limited to the purchasing of "ranch supplies," so-called.

Ratification of a contract made by an agent need not be in express terms in order to bind the principal. "If it is fairly inferable from the words or conduct of the party it is sufficient. Like the act of conferring antecedent authority upon an agent, it may be express or implied." (*Pope* v. *Armsby Co.,* 111 Cal. 159, 163, [43 Pac. 589]; *Ralphs* v. *Hensler,* 97

Cal. 296, [32 Pac. 243] ; *Puget Sound Lumber Co.* v. *Krug,* 89 Cal. 237, [26 Pac. 902].)

"It may be said, as to the character of proof from which ratification may be inferred, that it is most frequently established by implication from the conduct and acts of the party in whose behalf the unauthorized agency was assumed, inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it." (*Ballard* v. *Nye,* 138 Cal. 588, 597, [72 Pac. 156, 159].)

Lou Kum Shu was sufficiently made to understand by the plaintiff that the firm of Ford & Co. looked to him as the responsible party for the whole account opened by Covey at its store—the "groceries" as well as the "ranch" account. If Covey's authority, under the agreement between him and Lou Kum Shu, was, so far as purchasing supplies was concerned, restricted to the purchasing of wheat, barley, and other seeds, as is the contention of the appellant, it was his duty to have so notified Ford & Co. at the time the above conversation was had between him and the plaintiff and to have expressly repudiated the account for groceries as one not within the rightful power of Covey as his agent to cause to be opened. Upon this proposition, however, he was silent and passive, and thus he led the firm to believe that the purchase of the groceries, like that of the other supplies, was within the scope of Covey's authority, as his agent, or, in other words, the effect of such conduct, taken in connection with his payment of part of the whole account, may and should be construed as an acquiescence in or ratification of Covey's transactions as to the groceries. (*Pacific Vinegar etc. Works* v. *Smith,* 152 Cal. 507, 511, [93 Pac. 85].) "Quiescence is tantamount to acquiescence," as some of the law writers have phrased the proposition, and, therefore, the law forbids the principal denying an authority the existence of which is implied from his own conduct, where such authority concerns and affects the rights of third parties. This rule is not alone applicable to the doctrine of ostensible agency, but is equally applicable to the doctrine of ratification.

We have carefully examined all the points involving attacks upon the rulings allowing answers to certain questions propounded to the witness. We do not conceive it to be necessary to give those assignments specific notice in this opinion. Even if it be conceded that some of said rulings were tech-

nically wrong, we see nothing in them which could have affected the substantial rights of the appellant, since it is manifest that a different conclusion would not have been reached upon the ultimate facts if the testimony allowed as the effect of said rulings had been viewed by the court, so far as the question of its admissibility was concerned, in harmony with the theory of the appellant with respect thereto, and, consequently, different rulings touching said testimony had been made. The cause was tried by the court, without a jury, and we have the right to assume that, if incompetent testimony crept into the record, the court disregarded it in deciding the questions at issue, there being ample competent testimony to support the conclusion reached. The only ruling of those complained of excluding evidence was the one by which the court foreclosed an answer to a certain cross-question propounded to the plaintiff and which had reference to the averment of the complaint that Lou Kum Shu was severally liable for the full sum of $554.19, the total amount sued for, the appellant thus attempting to show that when verifying the complaint the plaintiff knew that he was "swearing to something that was incorrect," since it appeared from the evidence that Lou Kum Shu was liable, if at all, for a part only of the sum sued for. The question, which could have served no other purpose than to impeach the witness, was repeatedly put to the witness, who as often answered it by saying in effect that he understood that he was suing both defendants for the full amount, etc. Finally, the court said that it understood what the witness intended to say, and refused to allow counsel to proceed further on that line of cross-examination. This action of the court was not under the circumstances, erroneous.

All the points calling for special consideration have now been disposed of.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 11, 1915.